UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ROBERT PECHON,

           Plaintiff,

- against -

HEWLETT-PACKARD COMPANY,

           Defendant.

------------------------------------------------------------x

06 Civ. No. _2504_

JUDGE BAER

ECF Case

## COMPLAINT

Plaintiff Robert Pechon ("Pechon" or "plaintiff") through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant Hewlett-Packard ("HP" or "defendant") as follows:

### NATURE OF ACTION

1. This action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") to obtain employee benefits that have been denied to plaintiff. In the alternative, this action is brought to assert a claim for breach of contract for failure to pay severance under Florida common law. In the alternative, this action is brought to assert a claim for breach of contract for failure to pay severance under California common law and violation of California wage statutes, Cal. Labor Code § 200 et seq.

2. Plaintiff seeks declaratory relief, money damages equal to the benefits or wages denied, attorneys' fees, costs, interest, and other appropriate legal and equitable relief.

234587 v1

## JURISDICTION AND VENUE

3. The Court has jurisdiction over plaintiff's ERISA claim pursuant to 29 U.S.C. § 1132 (e) (1) and 28 U.S.C. § 1331. The court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The court also has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(a)(1) because plaintiff and defendant are citizens of different states and the amount in controversy exclusive of interest exceeds $75,000.

4. Venue is proper in this District pursuant 28 U.S.C. § 1391 because the defendant resides in this District. Defendant has an office located at 2 Penn Plaza, New York, NY 10121.

## PARTIES

5. Pechon is a citizen of the State of Florida.

6. Defendant HP, a technology firm, is a corporation organized and existing pursuant to the laws of the State of Delaware with its headquarters in Palo Alto, California. HP has an office in and does substantial business in the Southern District of New York.

## FACTUAL ALLEGATIONS

Pechon's Background

7. Pechon has over twenty years of experience in the technology industry. From 1986 through 1989, Pechon worked for Packard Bell Electronics as Director, National Accounts. From 1989 through 1991, Pechon worked for Emerson Computer Corp. as Director, U.S. Sales.

8. In 1991, Pechon and two other individuals formed a private venture called Beyond Technology Inc. ("Beyond Technology"), a manufacture's representative for technology companies. As a manufacture's representative, Beyond Technology acted as a sales agent for technology companies, selling technology products in the marketplace and being paid by commission. Pechon served as the President of Beyond Technology from 1991 through 1992.

234587 v1                                                    2

9. In 1992, Pechon left Beyond Technology and began working for Compaq Computer Corp. ("Compaq") as Director, U.S. Sales. Prior to starting work at Compaq, Pechon severed all ties with Beyond Technology and informed the Compaq executives who recruited him that he previously worked at Beyond Technology.

10. At Compaq, Pechon was responsible for building a consumer sales and marketing organization. He outlined the business model, developed and led sales teams, and targeted major consumers.

11. In 1993, Compaq Vice President, U.S. Consumer Sales, Mike Norris ("Norris"), decided to hire Beyond Technology as a manufacturer's representative for Compaq. Norris knew that Pechon had previously been the President of Beyond Technology. Pechon did not receive any benefit from Beyond Technology's relationship with Compaq.

12. In 1994, Mike Larson ("Larson") replaced Norris as Compaq Vice President, U.S. Consumer Sales. Larson decided that Compaq should not continue to hire any manufacture's representatives and he terminated Compaq's relationship with Beyond Technology.

Compaq-HP Merger

13. In 2002, Compaq and HP merged. Prior to the merger, Pechon was one of the employees selected to work on a taskforce and develop a blueprint for the merger.

14. After the merger, Pechon became a General Manager for HP in U.S. Consumer Sales, overseeing a $2 billion business marketing personal computers and imaging solutions to multiple business segments. Pechon led a team of 10 managers and 47 employees in operations, supply chain, finance, human resources, and sales/marketing. Pechon's team supported approximately 25 distributors and retail accounts with headquarter locations in New York, Califor-

nia, Washington, Texas, Florida, Illinois, Nebraska, Wisconsin, New Jersey, Pennsylvania, Ohio, Georgia and Massachusetts. Pechon was promoted to Vice President in November 2002.

15.    Following the Compaq-HP merger, Pechon reported to Bill DeLacy ("DeLacy"), Vice President, North American Sales, U.S. Consumer Sales, who was responsible for sales and marketing of consumer products in the United States. DeLacy was a former HP employee. DeLacy had left HP for a period of time, worked at New Age Electronics Inc. ("New Age"), a distributor of technology products, and then returned to HP prior to the merger with Compaq.

BDI Laguna and New Age Contracts with HP

16.    Prior to the Compaq-HP merger, HP, with DeLacy's approval, used New Age as its exclusive distributor for the retail consumer market.

17.    After the Compaq-HP merger, however, HP assigned a portion of its retail consumer business to another distributor, BDI Laguna. BDI Laguna was formed in 2000 from the merger of The Laguna Corporation and BDI, both distributorships. At the time of the BDI-Laguna merger, Beyond Technology's business was transferred to the newly merged company.

18.    HP first awarded business to BDI Laguna in the fall of 2002. HP awarded BDI Laguna HP's distributorship for companies in the Rent-To-Own market, a market that BDI Laguna specialized in. The decision to award BDI Laguna HP business was made by an evaluation team that consisted entirely of former HP employees. Pechon was not involved in this decision.

19.    When Pechon began to make decisions about awarding HP's business to distributors, he determined, with DeLacy's approval, that: (1) BDI Laguna would service the Rent-To-Own market and the Amazon.com account; (2) D&H Distributing of Harrisburg, Pennsylvania, would service the educational market; and (3) New Age would remain HP's exclusive distributor for all of HP's other customers.

20.     Pechon did not receive any benefit from HP's relationship with BDI Laguna.

21.     In or about late 2002, Aaron Rents, one of HP's Rent-To-Own clients, requested that HP use New Age as its distributor rather than BDI Laguna. In the summer of 2003, in response to Aaron Rents' request, Pechon began using New Age as its distributor.

22.     By 2004, some of New Age's HP retail accounts complained to HP about New Age's service and requested that HP use BDI Laguna as its distributor instead of New Age. Initially, Pechon did not agree to move any business from New Age to BDI Laguna.

23.     In June 2004, however, one of HP's clients, PC Mall.com, threatened to stop doing business with HP if HP did not stop using New Age as its distributor for PC Mall.com. PC Mall.com recommended that HP allow BDI Laguna to service its account instead. Pechon suggested to New Age's Chief Executive Officer, Adam Caroll ("Caroll"), that he should attempt to solve New Age's service problem and to persuade PC Mall.com to continue to work with New Age. PC Mall.com met with Caroll but refused to continue doing business with New Age. Consequently, Pechon transferred HP's PC Mall.com business to BDI Laguna.

24.     In or about August 2004, at the request of one of its new clients, Radioshack.com, Pechon also began using BDI Laguna as HP's distributor for Radioshack.com.

New Age's False Allegations Concerning Impropriety By Pechon and BDI Laguna

25.     Upon information and belief, New Age executives were concerned that BDI Laguna was gaining HP's business at New Age's expense. Upon information and belief, New Age sought to damage the relationship between HP and BDI Laguna and between HP and Pechon.

26.     Upon information and belief, New Age executives knowingly made false statements to HP management about Pechon and BDI Laguna, including statements that: (1) Pechon was improperly favoring BDI Laguna over New Age because of his past relationship with Be-

234587 v1                                               5

yond Technology; (2) BDI Laguna was improperly claiming from HP more rebate funds, called Demand Generation Funds, than it was entitled to; (3) BDI Laguna was improperly shipping HP product to HP employees who worked for Pechon; and (4) BDI Laguna was improperly giving gifts to HP employees who worked for Pechon.

27. Upon information and belief, in response to the accusations made about Pechon and BDI Laguna by New Age executives, HP management instructed its Global Investigations department to conduct an investigation into Pechon and BDI Laguna, ultimately fired Pechon, and reduced its business with BDI Laguna.

HP Investigation

28. On or about November 22, 2004, DeLacy told Pechon that HP corporate audit had instructed DeLacy to inform BDI Laguna that HP would be conducting an audit of BDI Laguna's business.

29. On or about November 29, 2004, an HP Human Resources Manager instructed Pechon to meet with HP auditors in HP's Miami office.

30. On or about November 30, 2004, Pechon met with two investigators from HP's Global Investigations department for 6 ½ hours at HP's Miami office. Karen Langford ("Langford"), an HP Standards of Business Compliance employee, participated in this meeting by telephone. During this meeting, it became apparent that the investigators were not conducting a routine audit of BDI Laguna but were instead investigating whether Pechon had personally ever engaged in any improper conduct.

31. The HP investigators questioned Pechon about his relationship with BDI Laguna and his former interest in Beyond Technology. Pechon informed the investigators that he had

not had any professional relationship with Beyond Technology since starting at Compaq in 1992 and that he had no personal interest in BDI Laguna.

32.   The investigators also asked Pechon about a corporation called Compass Trading ("Compass") that Pechon had formed in 1991. Pechon explained that Compass had not done any business after he began working with Beyond Technology.

33.   In addition, the investigators asked Pechon about a particular expense report, which Pechon explained had been authorized by DeLacy. The investigators also questioned Pechon about HP's use of Demand Generation Funds, and Pechon explained the various scenarios under which a distributor would be entitled to Demand Generation Funds.

34.   At the conclusion of the November 30 meeting, the investigators told Pechon that he had been helpful and cooperative.

35.   After the November 30, 2004 meeting with HP investigators, Pechon attempted to obtain information about the ongoing investigation. HP refused to provide Pechon with any information about the investigation. In addition, HP Human Resources Manager Sue Johnson ("Johnson") instructed Pechon not to discuss the investigation with anyone inside or outside of HP. Johnson did say that Pechon could speak with DeLacy about the matter.

36.   On or about December 3, 2004, DeLacy told Pechon that HP was investigating two of Pechon's employees for alleged violations of HP's Standards of Business Conduct. DeLacy did not provide Pechon with any details about the investigation.

37.   On or about December 22, 2004, Johnson called Pechon regarding an email sent to him by Langford. Pechon had not received the email because he was traveling. Johnson informed him that Langford's email stated that HP believed Pechon had failed to keep information

about HP's investigation into BDI Laguna confidential. Pechon told Johnson that he had not spoken to anyone other than DeLacy about the investigation.

38. In January 2005, Pechon was instructed by HP Human Resources to meet with the Global Investigations team again while he was at a trade show in Las Vegas. Pechon met with Vince Nye ("Nye"), the head investigator for one hour. Langford participated in the meeting by telephone.

39. Nye questioned Pechon about his relationship with BDI Laguna and Beyond Technology. Nye asked Pechon who at HP knew about his past relationship with Beyond Technology. Pechon informed Nye that both Norris and Larson knew about his past involvement with Beyond Technology. By 2005, Larson had been promoted to Senior Vice President for the Americas at HP.

40. Nye also asked Pechon if he had received a computer monitor from BDI Laguna. Pechon explained to Nye that one time he had BDI Laguna ship him a replacement for his home office computer monitor. Pechon asked BDI Laguna to ship the monitor to him because he would receive it faster from BDI Laguna than he would have received it if it was shipped directly from HP.

41. Nye also asked Pechon about certain charitable contributions made from Pechon's HP budget. Pechon explained which charities received the donations and the business reasons for the donations.

42. After the January 2005 meeting with Nye, Pechon was not contacted again about HP's investigation.

43. Upon information and belief, from November 2004 through February 2005, HP also conducted an extensive investigation at BDI Laguna's offices in New Jersey.

Pechon's Firing

44. On or about February 4, 2005, Johnson and DeLacy called Pechon and told him that he was fired. Pechon asked them why he was being fired and was told that it was because he violated HP's Standards of Business Conduct. When Pechon requested more information about the reason for his firing, DeLacy said only that it was related to an abuse of funding within Pechon's organization and "the conflict of interest thing." Pechon requested more information about the reasons for his firing from DeLacy and Johnson, but they refused to provide any additional information.

45. The reasons that DeLacy and Johnson gave for firing Pechon are false. Pechon did violate HP's Standards of Business Conduct. Pechon was not responsible for any abuse of funding within his organization. There was no conflict of interest between Pechon and HP.

HP's Severance Plan

46. In October 2003, HP adopted a severance program for Senior Executives (the "Severance Program"). Under the Severance Program, HP Vice Presidents receive a lump-sum severance payment equal to their annual base salary and target cash bonus if they qualify for the Severance Program. Executives qualify for the Severance Program if their employment is terminated without cause.

47. The Severance Program defines cause as an employee's "material neglect (other than as a result of illness or disability) of his or her duties or responsibilities to HP or conduct (including action or failure to act) that is not in the best interest of, or is injurious to, HP."

Pechon Is Entitled to Severance From HP

48. Despite his requests that HP pay him severance, Pechon was not paid any severance after HP terminated his employment.

49. On or about February 25, 2005, Pechon's counsel wrote to HP and requested that HP pay Pechon the severance owed to him because Pechon was fired without cause. HP refused to do so.

50. After receiving another letter from Pechon's counsel requesting that HP identify any reason that Pechon was fired, HP responded that Pechon was fired due to: (1) the alleged misuse of Demand Generation Funds; (2) the receipt of HP and other products without paying for them; (3) the interference with an official HP investigation; and (4) the failure to disclose potential conflicts of interest.

51. The reasons provided by HP for firing Pechon are false:

(1) Demand Generation Funds are funds that are paid to HP distributors according to rebate offers on HP merchandise. In accordance with rebates that HP offered to BDI Laguna, HP paid BDI Laguna Demand Generation Funds. HP, however, failed to properly document the transfer of Demand Generation Funds to BDI Laguna. Upon information and belief, the Global Investigations team and auditors investigating BDI Laguna initially assumed that BDI Laguna was improperly receiving Demand Generation Funds. Upon information and belief, the investigators and auditors eventually determined that BDI Laguna had not improperly received any Demand Generation Funds, but that HP had failed to properly document the transfer of funds. Pechon was not involved in the HP accounting error and did not misuse any Demand Generation Funds or any other HP funds.

(2) Pechon never improperly received any HP product without paying for it. As Pechon explained to the investigators, he received one HP monitor, which he

was entitled to for his home office use, from BDI Laguna. He received the monitor from BDI Laguna rather than directly from HP only because it would arrive faster from BDI Laguna.

(3) Pechon at no time interfered with HP's investigation into BDI Laguna. Pechon met with investigators both times he was asked to do so and answered their questions to the best of his ability.

(4) No conflict of interest existed between Pechon and HP because of Pechon's former relationship with Beyond Technology. Pechon received no benefit from any HP business relationship with BDI Laguna or Beyond Technology. Pechon began his employment at Compaq only after full disclosure of his prior involvement with Beyond Technology. Moreover, HP's Senior Vice President for the Americas knew about Pechon's former relationship with Beyond Technology.

52. At all times during his employment with HP, Pechon acted in the best interests of HP. Pechon never neglected his duties or responsibilities to HP or acted in any way injurious to HP.

53. HP did not have cause, as defined by the Severance Program, to fired Pechon. Consequently, in accordance with the Severance Program, HP owes Pechon severance pay.

## FIRST CAUSE OF ACTION – ERISA

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-53 as if set forth fully herein.

55. By the acts described above, defendant has denied plaintiff severance benefits to which he is entitled, in violation of ERISA.

## SECOND CAUSE OF ACTION (IN THE ALTERNATIVE) – BREACH OF CONTRACT UNDER FLORIDA COMMON LAW

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-55 as if set forth fully herein.

57. Although HP fired Pechon without cause as described above, HP refused to pay Pechon severance as required by the Severance Program.

58. Defendant's failure to pay Pechon the severance pay required by the Severance Program has damaged Pechon, as described above.

59. The plaintiff has incurred and will incur costs and reasonable attorneys' fees in connection with this action to recover the sums unlawfully withheld from him by the defendant.

## THIRD CAUSE OF ACTION (IN THE ALTERNATIVE) – BREACH OF CONTRACT UNDER CALIFORNIA COMMON LAW

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-59 as if set forth fully herein.

61. Although HP fired Pechon without cause as described above, HP refused to pay Pechon severance as required by the Severance Program.

62. Defendant's failure to pay Pechon the severance pay required by the Severance Program has damaged Pechon, as described above.

## FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA WAGE STATUTES

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-62 as if set forth fully herein.

64. The defendant has willfully failed and refused to pay the plaintiff for the compensation due him, as required by Cal. Labor Code. § 200 et seq.

65. The plaintiff has incurred and will incur costs and reasonable attorneys' fees in connection with this action to recover the sums unlawfully withheld from him by the defendant.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(a) declare the acts complained of herein are in violation of ERISA;

(b) in the alternative, declare the acts complained of herein constitute a breach of contract for failure to pay wages under Florida common law;

(c) in the alternative, declare the acts complained of herein constitute a breach of contract under California common law and a violation of California wage laws, Cal. Labor Code § 200 et seq.;

(d) direct defendant to make plaintiff whole for all benefits or wages he would have received but for defendant's unlawful conduct;

(e) award plaintiff such interest as is allowed by law;

(f) award plaintiff his reasonable attorneys' fees and costs pursuant to ERISA, 29 U.S.C. § 1132(g), or F.S.A. § 4448.08, or Cal. Labor Code § 218.5;

(g) award pre-judgment, post-judgment interest, and costs; and

(h) grant such other and further relief as this Court deems necessary and proper.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on his state law claims.

Dated: New York, New York
   March 30, 2006

               VLADECK, WALDMAN, ELIAS
                & ENGELHARD, P.C.

        By: *[signature]*
            Anne C. Vladeck (AV 4857)
            Karen Cacace (KC 3184)
            Attorneys for Plaintiff
            1501 Broadway - Suite 800
            New York, New York 10036
            (212) 403-7300